# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO
MAR 22 2019
JEFFREY P. COLWELL
CLERK

Civil Action No. _____ Unassigned _____
(To be supplied by the court)

_____ Martel White _____, Plaintiff

v.

_____ C/O Elizabeth Stephenson _____,

_____ Lt.  Elizabeth Woods #13057 _____,

_____ Capt. Clifford Gulliford #10334 _____,

_____ Buena Vista Corr. Fac. Intel Officer Bland _____,

_____ Buena Vista Corr. Fac. Intel Officer Sgt. Wilda (Wida?) ___,

_____ 4 Unnamed Unknown Correctional Officers at Buena Vista Correctional Facility ___,
Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not

contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Martel White, DOC# 111722, LCF, P.O. Box 1000, 49030 State Highway 71 South, Limon, CO 80826
(Name, prisoner identification number, and complete mailing address)

_____ None _____
(Other names by which you have been known)


*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
_X_    Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: *(Please explain)* _____


## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    ___ C/O Elizabeth Stephenson, _____
(Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211


At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No *(check one)*. Briefly explain:

C/O Elizabeth Stephenson was employed by the Colorado Department of

Correction Buena Vista Correctional Facility as a Corrections Officer (agent of
the State)  at and during all times in this case  .

Defendant 1 is being sued in his/her  X  individual and/or  X  official capacity.

Defendant 2: _____ Lt.  Elizabeth Woods #13057_____
                        (Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211
_____

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  X  Yes ___ No (*check one*).  Briefly explain:

Lt. Elizabeth Woods, #13057 was employed by the Colorado Department of
Correction Buena Vista Correctional Facility as a Corrections Officer III (agent
of the State) at and during all times during this case.

Defendant 2 is being sued in his/her  X  individual and/or  X  official capacity.

Defendant 3: _____ Capt. Clifford Gulliford, #10334 _____
                        (Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211
_____

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  X  Yes ___ No (*check one*).  Briefly explain:

Capt. Clifford Gulliford, #10334 was employed by the Colorado Department of
Correction Buena Vista Correctional Facility as a Corrections Officer IV (agent
of the State) at and during all times during this case.

Defendant 3 is being sued in his/her  X  individual and/or  X  official capacity.

Defendant 4: _____ Buena Vista Corr. Fac. Intel Officer Bland _____
                        (Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211
_____

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  X  Yes ___ No (*check one*).  Briefly explain:

3

Buena Vista Corr. Fac. Intel Officer Bland was employed by the Colorado
Department of Correction Buena Vista Correctional Facility as a Corrections
Officer IV (agent of the State) at and during all times during this case.

Defendant 4 is being sued in his/her  X  individual and/or  X  official capacity.

Defendant 5: _____ Buena Vista Corr. Fac. Intel Officer Sgt. Wilda (Wida?) _____
(Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  X  Yes ___ No (check one).  Briefly explain:

Buena Vista Corr. Fac. Intel Officer Sgt. Wilda (Wida?) and was employed by
the Colorado Department of Correction Buena Vista Correctional Facility as a
Corrections Officer II (agent of the State) at and during all times during this
case.

Defendant 5 is being sued in his/her  X  individual and/or  X  official capacity.

Defendant 6: 4 Unnamed Unknown Correctional Officers at Buena Vista Correctional Facility
(Name, job title, and complete mailing address)

Buena Vista Correctional Facility, P.O. Box 2017, Buena Vista, CO 81211

At the time the claim(s) in this complaint arose, was this defendant acting under
color of state or federal law?  X  Yes ___ No (check one).  Briefly explain:

4 Unnamed Unknown Correctional Officers were employed by the Colorado
Department of Correction Buena Vista Correctional Facility as a Corrections
Officers (agent of the State) at and during all times during this case.

Defendant 6 is being sued in his/her  X  individual and/or  X  official capacity.


**C.    JURISDICTION**

*Indicate the federal legal basis for your claim(s): (check all that apply)*

_ X _  42 U.S.C. § 1983 (state, county, and municipal defendants)

_____  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
(federal defendants)

_____  Other: (*please identify*) _____

4

## D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

**Brief History of the Case:**

In the instant case, Mr. Martel White is bring suit for actions, and inactions, stemming from the Defendants' failure to protect Mr. Martel White from assault, serious injury, and continued harm. In pertinent part, this case stems from an initial assault by Mr. Martel White on a member of the Blood Gang, which warranted retaliation by other offenders. Mr. White told the Defendants' that he feared for his life, that he was facing serious and substantial risk of being assaulted upon his release from segregation, that he had been told he was going to be assaulted upon his return to general population, and that he needed protective custody in order to be safe from retaliation. Defendants ignored Mr. White's request, and forced him back into general population, where he was subsequently jumped by affiliated STG members in retaliation for his assault on the Blood Gang member. While being assaulted by these offenders, Mr. White was proned out, on the floor, attempting to crawl towards C/O Elizabeth Stephenson for safety, C/O Elizabeth Stephenson sprayed Mr. White with "OC" spray, further compounding his injuries and attacking him who was clearly a victim of this assault.

**CLAIM ONE:  <u>The Defendants Violated the Plaintiff's 8th Amendment U.S. Const. rights:</u>**

   **Supporting facts:**

A. **Failure to Protect, in violation of the 8th Amendment:** "Prison officials have a duty . . . to

   protect prisoners from violence at the hands of other prisoners." <u>*Farmer*, 511 U.S. at</u>

   <u>833</u> (internal quotation marks and citation omitted). "It is not, however, every injury

   suffered by one prisoner at the hands of another that translates into constitutional

   liability for prison officials responsible for the victim's safety." <u>*Farmer*, 511 U.S. at 834</u>.

   The objective component of the <u>Eighth Amendment</u> test requires Mr. Bingham to show

5

that he is "incarcerated **[\*24]** under conditions posing a substantial risk of serious

harm." _Farmer_, 511 U.S. at 834. This includes "official conduct that is sure or very likely

to cause serious injury at the hands of other inmates." _Benefield v. McDowall_, 241 F.3d

1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted).

1. In the instant case, Mr. Martel White requested protective custody after assaulting a

   Blood Gang member;  see _Farmer v. Brennan, 511 U.S. 834_ The Supreme Court, however,

   held that "Under the test we adopt today, an [8th Amendment] claimant need not show

   that a prison official acted or failed to act believing that harm actually would befall an

   inmate; it is enough that the official acted or failed to act despite his knowledge of a

   substantial risk of serious harm" and "whether a prison official had the requisite

   knowledge of a substantial risk is a question of fact subject to demonstration in the usual

   ways, including inference from circumstantial evidence…and a fact finder may conclude

   that a prison official knew of a substantial risk from the very fact that the risk was

   obvious".

   a. Mr. White TOLD the prison officials named in this lawsuit of the substantial risk to

      his safety, and they ignored that risk; there is no requirement to look at

      circumstantial evidence (however, the incident report of Mr. White being forced

      back into general population by the four un-named guards shows that

      "something" must have been wrong with Mr. White going back into general

      population) because the immediate evidence speaks for itself;

2. While in segregation, Mr. White spoke to Defendants Sgt. Wilda (Wida)[ incident report

6

has variance in spelling, so both forms of the name are used throughout this complaint],

Lt. Woods, Capt. Gulliford, and Intel Officer Bland, specifically stating he was in fear for

his life, had been told there would be retaliation for his assault on the Blood Gang

member, and that he was requesting protective custody;

    a.  The Constitution is violated "**where defendants <u>know</u> of the danger** or where the

threat of violence is so substantial or pervasive that their knowledge could be

inferred, and yet defendants fail to embrace a policy or **take other reasonable**

**steps which <u>may have</u> prevented harm**." <u>Goka v. Bobbitt, 862 F.2d 646, at 651</u>

<u>(7th Cir. 1988)</u>; see also <u>Benefield v. McDowell, 241 F.3d 1267, 1271 (10th Cir.</u>

<u>2001)</u>;(Emphasis Added)

3.  Defendants in paragraph 2 (above) all denied him his request, and did not follow the

procedures in the Colo. Dept. of Corr. Admin. Reg. 600-1 and 600-1 Attachment F (See

claim number 2);

4.  At this point in the narrative, Mr. White was removed from his cell, in handcuffs, in

segregation at Buena Vista Correctional Facility and told that he was "going to talk to

somebody";

    a.  4 Unnamed Unknown Correctional Officers were assigned to "escort" Mr. White

from his cell to this "someone's office";

    b.  While en route to "talk to someone", Mr. White realized that he was not, in fact,

headed to the administrative or other offices at the facility, at which point he

asked where he was headed;

    c.  Mr. White was informed by one of the 4 Unnamed Unknown Correctional Officers

that he was being taken to "Lower North", to which Mr. White replied that he

was not supposed to be returning to general population but had asked for

Protective Custody; "To **[\*25]** be guilty of deliberate indifference, the defendant

must know he is creating a substantial risk of bodily harm." _Green v. Branson,_

_108 F.3d 1296, 1302 (10th Cir. 1997)_ (internal quotation marks and citation

omitted).

d.  These 4 Unnamed Unknown Correctional Officers lied to Mr. White in order to

get him to leave his cell, and then used force when Mr. White refused to walk

any further into a dangerous situation;

e.  No one came back to see if Mr. White was okay with his new living assignment, or

if there had been any continued threats to his safety, life, and/or health;

5.  The standard to determine whether or not the Defendants' action are equivalent to a

failure to protect is as follows:

a.  "The subjective component of the _Eighth Amendment_ test requires Mr. Bingham

to show that Defendants had the culpable state of mind known as "deliberate

indifference."" _Farmer_, 511 U.S. at 834. Deliberate indifference requires a higher

degree of fault than negligence or even gross negligence. _Berry v. City of_

_Muskogee, Oklahoma_, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation

omitted). "[A] prison official may be held liable under the _Eighth Amendment_ for

denying humane conditions of confinement only if he knows that inmates face a

substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it." _Farmer_, 511 U.S. at 847. "To **[\*25]** be guilty of

deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotation marks and citation omitted). See also MacKay v. Farnsworth, 48 F.3d 491, 492-93 (10th Cir. 1995);

b. Mr. White clearly made known that he was in substantial risk of harm, namely that there was retaliation that *would* take place if he was returned to the yard, and he made known that it was related to a specific, known event, namely his assault on a member of the Blood Gang;

    i. The Defendants' named in Paragraph 2 were all informed, each and every one of them, personally, and yet refused to act upon the information he provided;

    ii. Intel Officer Gossett, Case Manager I Walters, and Case Manager III Piper at Limon Correctional Facility state they have no documentation of this event, and that no paperwork on a request for Protective Custody can be found (See claim number 2)

    iii. Defendants showed a deliberate indifference to the needs of Mr. White, namely that he has a right to be protected from substantial harm "An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry,* 900 F.2d at 1496.

    iv. "Officer **notified** of a risk could be held liable **even if he didn't know the details of the risk**; to hold otherwise "would essentially reward guards

who put their heads in the sand by making them immune from suit – the

less a guard knows the better. That view is inconsistent with *Farmer*"

Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005), citing Farmer v.

Brennan, 511 U.S. at 843, n.8;

    v.  "Plaintiff's allegations that he had informed various supervisory officials

        about his problems sufficiently plead their personal involvement."

        Merritt v. Hawk, 153 F. Supp. 2d 1216, 1227-28 (D. Colo. 2001)

  c.  Mr. White clearly showed that he was in danger of serious bodily harm; he

    clearly and repeatedly requested protective custody; he repeatedly stated he

    was in fear for his life; he consistently and without variation stated he would be

    retaliated against for his assault against a member of the Blood Gang (which is a

    **common**, not-unknown occurrence, i.e. the Defendants knew or should have

    known there was a substantial chance of being assaulted in retaliation for such

    an action)

6.  Mr. White was assaulted by 3 individuals at once ("jumped") upon his return to general

    population, exactly as Mr. White had made known to staff would happen, and in

    retaliation for his assault on a member of the Blood Gang;

7.  Mr. White has a Constitutional right to be free from cruel and unusual punishment,

    which results from the Defendants' failure to protect;

**B. Failure to Be Protected from Cruel and Unusual Punishment, in Violation of the**

    **8th Amendment:** *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) ("[h]owever

legitimate **[*27]** [the plaintiff prisoner's] fears may have been, . . . **it is the reasonably preventable assault itself**, rather than any fear of assault, that gives rise to a compensable claim under the <u>Eighth Amendment</u>").Further, to meet the subjective component of an <u>Eighth Amendment</u> claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" <u>Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)</u> (quoting <u>Farmer, 511 U.S. at 847</u>). The Supreme Court has said that <u>deliberate indifference</u> governs 8th Amendment prison cases **except** for "one class of prison cases: when 'officials stand accused of using excessive physical force'." <u>MacKay v. Farnsworth, 48 F.3d 491, 492-93 (10th Cir. 1995)</u> (Emphasis Added)

1. In the instant case, Mr. White had expressed that he had substantial fears of being assaulted in retaliation for his assault on a member of the Blood Gang, and the Defendants Mentioned in A. 2. above failed to prevent an assault that could have reasonably, and relatively easily, been prevented by granting Mr. White protective custody and/or moving him to another facility**; however, the assault that Mr. White received because of the Defendants' failure to protect was compounded further by the actions of Defendant C/O Elizabeth Stephenson (here-after Defendant Stephenson):**

   a. Defendant Stephenson was one of the first responders to the situation where Mr. White was assaulted by 3 individuals at once ("jumped");

11

b. Her actions are cruel and unusual punishment because, instead of protecting Mr. White, who was prone out, on the ground, attempting to crawl away from the altercation towards Defendant Stephenson, she decided to spray Mr. White with "OC" spray, not only injuring him with chemicals in the eyes, but further handicapping him in his attempt to reach "safety".

    A. "Officers may not use chemical agents against a person who **poses no risk**, or continue to use chemical agents on a person who has been secured or **has stopped resisting**." See Prisoners Self-Help Litigation Manual, 4th Ed., page 138, column 1, lines 2-3, note 1055-6; (Emphasis Added)

    B. "Officer could be held liable for spraying pepper spray indiscriminately along a tier…" (If spraying indiscriminately along a tier can be considered cruel and unusual punishment excessive use of force, how much more so spraying an individual on the ground who is not resisting nor fighting?) "… We will not require inmates to be subjected to the malicious whims of prison guards." DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001)

c. Mr. White was not an active threat to staff or other offenders, and was, indeed, attempting to get away from a significant threat to his body, health, and safety;

    d.  Defendant Stephenson's actions constitute cruel and unusual punishment because her actions were deliberately sadistic and malicious, were not warranted by the situation (again, Mr. White was on the ground attempting to evade injury by the 3 individuals), and was in clear contravention of established procedure (namely, to spray the people that are assaulting another, not to spray an obvious victim of assault);

2. Prison officials violate the <u>Eighth Amendment</u> when they use force "maliciously and sadistically" in order to cause harm, **regardless of whether the inmate suffered any injury.** <u>Hudson v. McMillian</u>, <u>503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)</u>. "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> To be sure, not every "push or shove" by a prison guard amounts to a constitutional violation. <u>Johnson v. Glick</u>, <u>481 F.2d 1028, 1033 (2d Cir. 1973)</u>, *overruled on other grounds by* <u>Graham v. Connor</u>, <u>490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)</u>. A minor use of force may be de minimis if it "is not of the sort 'repugnant to the conscience of mankind.'" <u>Hudson, 503 U.S. at 10</u> (quoting <u>Whitley v. Albers</u>, <u>475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986))</u>. (Emphasis Added)

3. The **[*31]** Court's analysis of Plaintiff's excessive force claim includes both an objective and a subjective component. <u>Wilson v. Seiter</u>, <u>501 U.S. 294, 298-300, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)</u>. First, the Court considers whether the alleged force "was objectively harmful enough to establish a constitutional violation." <u>Smith v. Cochran</u>, <u>339 F.3d 1205, 1212 (10th Cir. 2002)</u> (citation

omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above de minimis uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9-10 (citations omitted). While the presence of an injury is not required, presence or absence of an injury is a factor in the determination of whether

    a.  The use of "OC" spray against victims is not a part of "routine discomfort" that Mr. White would face as a condition of his confinement;

    b.  Between the failures of the Defendants listed in A. 2. to protect Mr. White from harm, the assault that resulted from that failure, Defendant Stephenson's failure to protect Mr. White from harm during the assault, and then Defendant Stephenson's use of "OC" spray against Mr. White (the victim) instead of the 3 individuals assaulting him, clearly shows a malicious and sadistic use of "OC" spray, in violation of Mr. White's right to be free from cruel and unusual punishment;

    c.  The first prong of the test for "cruel and unusual punishment" has been met by Mr. White; Defendants' conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is **not** required, but "[t]he extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain").

14

4. Second, as to the subjective component, the Court considers whether the Defendants intended harm, i.e. whether they acted "maliciously and sadistically." *See Hudson*, 503 U.S. at 9. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain **[*32]** and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley*, 475 U.S. at 320-21). The subjective element can only be shown through allegations indicating that the Defendants acted with a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Hudson*, 503 U.S. at 8.

   a. Defendant Stephenson would not have sprayed Mr. White (the victim), who was on the floor crawling away from the altercation towards what he thought was safety, instead of the 3 individuals assaulting him, if she had not been intent on causing harm to Mr. White;

   b. There is a significant difference between 3 people standing (and fighting) and 1 person laying on the ground (not fighting), and no confusion can be had between the 2 "groups" of "involved individuals". They are physically in two vastly different positions, engaging in two vastly different actions, and are in two vastly different locations (in re: targeting for use of "OC" spray);

   c. There can be no objective reason to spray an individual who is not fighting; the purpose of "OC" spray is to separate individuals who will not stop

fighting, not to spray individuals not actively engaged in fighting ( it would be the same as spraying an individual who is proned out on the ground, handcuffed, after an altercation has ended… there is no objective reason for such an action)

    d.  She cannot claim Mr. White was a threat: **he was on the ground**

    e.  She cannot claim Mr. White was fighting: **he was on the ground**

    f.  She cannot claim Mr. White was inseparable from the other 3 individuals: **he was on the ground**.

5.  Defendant Stephenson committed "cruel and unusual punishment", in violation of Mr. White's 8th Amendment right to be free from such, when she maliciously and sadistically sprayed Mr. White without reason, for no other purpose than to inflict harm and exacerbate injury;

6.  Intel Officer Sgt. Wilda (Wida?), the above mentioned Defendant in the initial Failure to Protect claim, stated that "people make mistakes"; however, a mistake is an admission that what was done actually happened, but you're "not responsible";

    a.  As already stated above, this reasoning flies in the face of both common sense and the facts of this case;

**C. Excessive Use of Force, in Violation of the 8th Amendment:** The use of excessive force by a prison official on a prisoner can rise to the level of an <u>Eighth Amendment</u> violation. *See <u>Northington v. Jackson</u>, 973 F.2d 1518, 1523 (10th Cir 1992)* ("excessive force claims

brought by convicted prisoners fall under the rubric of the Eighth Amendment's

prohibition against cruel and unusual punishment . . . "). The pivotal inquiry in an

excessive use of force claim is whether force was applied in a good-faith effort to

maintain and restore discipline, or maliciously and sadistically to cause harm. _Despain v._

_Uphoff_, 264 F.3d 965, 978 (10th Cir. 2001) (citing _Whitley_, 475 U.S. at 320-21).  **[*29]**

1.  An excessive force claim under the Eighth Amendment "involves two prongs: (1) an

    objective prong that asks if the alleged wrongdoing was objectively harmful enough

    to establish a constitutional violation, and (2) a subjective prong under which the

    plaintiff must show that the officials act[ed] with a sufficiently culpable state of

    mind." _Smith v. Cochran_, 339 F.3d 1205, 1212 (10th Cir. 2003). As to the objective

    element, the Tenth Circuit has "assumed that the use of mace and pepper spray

    could constitute excessive force." _Fogarty v. Gallegos_, 523 F.3d 1147, 1161-62 (10th

    Cir. 2008) (citing _DeSpain_, 264 F.3d at 978 ("[P]epper spray is an instrument with

    which prison officers wield their authority, or force, and thus its use implicates the

    excessive use of force.")). Nevertheless, the use of force is justified when there is a

    concern for the safety of the institution, the jailers, and the inmates. _See Hickey v._

    _Reeder_, 12 F.3d 754, 759 (8th Cir. 1993) (gathering Eight Circuit cases). _See also_

    _Whitley_, 475 U.S. at 320 (prison official may use **reasonable** force to "maintain or

    restore discipline.")(emphasis added)

2.  As stated above, Mr. White was subjected to cruel and unusual punishment when

    Defendant Stephenson sprayed him with "OC" spray even though he was clearly the

victim, causing him harm and injury to his right eye in addition to the injuries he had

already sustained at the hands of the other 3 individuals;

    a. Mr. White also sustained back injuries which are documented by CDOC,

       which he is currently and permanently taking Kepra for, due to the assault

       and force used by Defendant C/O Elizabeth Stephenson;

    b. "OC" spray (i.e. pepper-spray, mace) has already been determined by the

       10th Circuit to be excessive force;

3. Mr. White states that, because he was on the ground already, was not fighting, and

was clearly attempting to escape the altercation, there can be no *"good-faith" effort*

*to maintain and restore discipline (id. Despain)*: **Mr. White was NOT the one**

**fighting**.

4. The first prong of the test in *Smith v. Cochran* is whether Mr. White suffered an

injury sufficient to constitute a Constitutional violation:

    a. While the 10th Circuit has stated use of "OC" spray *can* constitute excessive

       use of force, it is important to point out that Mr. White had already suffered

       additional injuries prior to getting sprayed with "OC", so that the injury of

       being sprayed with "OC" is an additional, compounded injury inflicted solely

       by Defendant Stephenson;

    b. Excessive use of force is a Constitutional violation;

5. The second prong of the test in *Smith v. Cochran* is whether the official acted with a

sufficiently culpable state of mind:

    a. Defendant Stephenson acted in full control of her faculties; she was not

intoxicated, impaired, or in any other way unable to differentiate between victim and assailants (esp. since Mr. White was on the ground as a victim and the assailants were standing up);

b. Defendant Stephenson had a culpable state of mind, and chose to deliberately spray Mr. White, inflicting harm in a malicious and sadistic manner, without any objective reason for such conduct;

6. WHEREFORE, the Plaintiff, Mr. Martel White contends that each one of the above mentioned Defendants violated his Constitutional right to be free from violations of the 8th Amendment, namely:

a. Defendant C/O Elizabeth Stephenson violated the 8th Amendment by **failing to protect** Mr. White from an assault on September 13th, 2018, and when she sprayed Mr. White with "OC" spray while he was a victim, laying on the ground, which was an **excessive use of force** and constitutes **cruel and unusual punishment**;

b. Defendant Lt. Elizabeth Woods (#13057) violated Mr. White's right to be free from **cruel and unusual punishment** when she refused to allow Mr. White protective custody and placed him back into general population, **failing to protect** him from assault by her direct actions and inactions when Mr. White directly and personally requested protective custody from her on July 25th, 2018; her refusal constitutes a **failure to protect**, as outlined above;

c. **Defendant Capt. Clifford Gulliford (#10334) violated Mr. White's right to be free from cruel and unusual punishment** when he refused to allow Mr. White

protective custody and placed him back into general population, **failing to**

**protect** him from assault by his direct actions and inactions when Mr. White

directly and personally requested protective custody from him on July 25th,

2018; his refusal constitutes a **failure to protect**, as outlined above;

d.  Defendant "4 Unnamed Unknown Correctional Officers" violated Mr. White's

right to be free from **cruel and unusual punishment** when they forcibly

returned him to general population, lying and using deceptive tactics to get

him to leave his cell and then physical force when he refused to walk any

further into a dangerous situation; these individuals contributed to, and are

responsible for, the **failure to protect** by returning him to general population

despite his protests and requests for protective custody, on July 25th, 2018;


**CLAIM TWO:  The Defendants Violated the Plaintiff's 14th Amendment U.S. Const.:**

**Supporting facts:**

A.  **The Defendants violated Mr. White's Constitutional right to Due
    Process under the 14th Amendment when they failed to follow
    established procedures in requesting Protective Custody.**

1.  The Colorado Department of Corrections has an established procedure for requesting

protective custody, a classification action found in Administrative Regulation 600-1;

2.  This procedure is handled through "Intel" officers at each facility, and is their direct

response to an inmates' Constitutional right to be protected from harm;

a.  "The Supreme Court held that prison officials may be held liable under the 8th

Amendment when they know a prisoner faces substantial risk of serious harm

and disregard that risk by failing to take reasonable measures to address it"

Farmer v. Brennan, 511 U.S. 825, (1994); However, the prisoner also has a

cognizable claim under Due Process where the prison officials have a specific

system in place for requesting protective custody and yet they fail to follow that

procedure;

    b.  The 14th Amendment forbids a state to "deny any person within its jurisdiction

        the equal protection of the laws" U.S. Const. Amend. XIV;

3.  The Defendants never state in their responses to Mr. White's grievances that he didn't

    request protective custody;

    a.  Their assertion is that "classification can't be challenged in the grievance

        procedure", which is a way to weasel out of responsibility because there is no

        other way to review a request for protective custody;

    b.  Furthermore, no one ever followed up on his request even though he did grieve

        the issue to determine whether or not there was an issue and whether or not

        protective custody was warranted, further failure to allot Mr. White Due Process

        on his request;

    c.  There is a report in the Colo. Dept. of Corr. Computer system (request discovery

        of this report) according to Intel Officer Gossett at Limon Correctional Facility that

        states Mr. White was forcibly removed from segregation and returned to general

        population against his will;

4.  A request for protective custody must be treated like every other request for protective

    custody, and the appropriate forms and procedures in place, created by the State and

protected by federal law, must be followed; "that all persons similarly situated should be

treated alike."

5. "The touchstone of due process is protection of the individual against the arbitrary action

   of government." <u>Dent v. West Virginia, 129 U.S. 114, 123 (1889)</u>

   a. The point here is that the Colo. Dept. of Corr. has a procedure to follow when an

      inmate requests protective custody, and the Defendants failed to follow those

      procedures, denying Mr. White the same protections under those procedures as

      others that were in similar situations;

   b. Mr. White is entitled to the protections of due process, and by the Defendants

      failing to afford Mr. White that due process, they violated his right to Due Process

      under the 14th Amend.;

   c. The report in the Colo. Dept. of Corr. shows an issue with Mr. White's return to

      general population, and Mr. White himself informed the Defendants of the

      danger to his safety (i.e. retaliatory assault) upon being returned to general

      population, and it can be inferred from the circumstances that there was a

      significant risk of harm to Mr. White from retaliatory assault because of the

      situation;

      i. Mr. White is entitled to relief in this matter;

6. There is a pattern of indifference to Mr. White's needs, a specific failure to follow

   procedures by officers at Buena Vista Correctional Facility, as illustrated by the 13

   separate issues he was forced to grieve, all the way through "step 3" (which makes it 39

   total times issues at BVCF were address without resolution), showing a pattern of

indifference to Mr. White's needs by prison staff, including the named Defendants in this

suit;

    a. See specifically grievance #'s: R-LF 18/19-00138847 and R-LF 18/19-00138846,

       relating to property that belong to Mr. White that was given to an individual who

       assaulted him (violating both common sense and common decency) and relating

       to the use of the term "CI" on a report that, though explained, should have been

       removed because it labeled him as a "snitch" when he was not, and put him in

       significant danger of assault from other inmates for this "tag";

         i. Mr. White was stabbed 17 times at Limon Correctional Facility for being

           labelled a "snitch" due to this report, so it is not mere speculation that this

           conduct took place;

7. The following Defendants are personally involved and both personally and officially liable

   in failing to follow the established procedures in Mr. White's request for protective

   custody:

    a. Lt. Elizabeth Woods (#13057), who was personally informed by Mr. White that he

       requested protective custody due to the threat to his safety, when she failed to

       initiate the procedures for protective custody and failed to file the appropriate

       forms and follow the appropriate Administrative Regulations which are in place

       for this very kind of situation;

    b. Capt. Clifford Gulliford (#10334), who was personally informed by Mr. White that

       he requested protective custody due to the threat to his safety, when he failed to

       initiate the procedures for protective custody and failed to file the appropriate

forms and follow the appropriate Administrative Regulations which are in place

for this very kind of situation;

c. Intel Officer Sgt. Wilda (Wida?)(BVCF), who was personally informed by Mr.

White that he requested protective custody due to the threat to his safety, when

he failed to initiate the procedures for protective custody and failed to file the

appropriate forms and follow the appropriate Administrative Regulations which

are in place for this very kind of situation;

d. Intel Officer Bland (BVCF), who was personally informed by Mr. White that he

requested protective custody due to the threat to his safety, when she failed to

initiate the procedures for protective custody and failed to file the appropriate

forms and follow the appropriate Administrative Regulations which are in place

for this very kind of situation;

e. The "4 Unnamed Unknown Correctional Officers", who was personally informed

by Mr. White that he requested protective custody due to the threat to his safety,

when they failed to initiate the procedures for protective custody and failed to

file the appropriate forms and follow the appropriate Administrative Regulations

which are in place for this very kind of situation, and forced Mr. White into

general population;

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you
were incarcerated?  __X__ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one*

*previous lawsuit, use additional paper to provide the requested information for each previous
lawsuit. Please indicate that additional paper is attached and label the additional pages
regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                    Gary Golder, Sterling Correctional Facility

Docket number and court:                    White v. Golder, 245 Fed. Appx. 763, 2007 U.S.
                                            App. LEXIS 19437

Claims raised:                              The prisoner argued on appeal that his due process
                                            rights were violated because he was not given
                                            notice of the potential penalties before his hearing.

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)   Dismissed August 14, 2007

Reasons for dismissal, if dismissed:        Failure to State a Claim

Result on appeal, if appealed:              The appeal was dismissed.

**\*\* It is important to note that Mr. White was not working his own case, but was being assisted
by an unqualified "JHL" with no legal training, experience, or professional background;
Please see attached letter. \*\***

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal
court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or
judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

        _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

        _X_ Yes ___ No (*check one*)

## G.    REQUEST FOR RELIEF
*State the relief you are requesting or what you want the court to do. If additional space is needed
to identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "G. REQUEST
FOR RELIEF."*

All requested relief is jointly and severally:

1. Compensatory Damages: $1,000,000.00 for damage to his right eye and permanent back injury, as well as injuries sustained from the assault itself that could have been prevented, as relief for all 8th Amendment claims, to each named defendant, jointly and severally;

2. Punitive Damages: $50,000.00 for failure to protect, excessive use of force, cruel and unusual punishment, and all other violations of the 8th Amendment and the 14th Amendment, to each named Defendant, jointly and severally;

3. Nominal Damages: $1.00 against the 4 Unnamed Unknown Correctional Officers specifically, and all other named defendants generally, jointly and severally;

4. Declaratory Relief: A statement by the Courts that all Defendants named and unnamed are responsible for the violations of Mr. White's Constitutional rights outlined in this complaint;

5. Injunctive Relief: That all Defendants are hereby forbidden from perpetrating the same conduct either now or in the future;

6. Judgment in favor of the Plaintiff, Mr. White, and against the Defendants;

## H.   PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.


Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non-frivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


_____
Martel White, Pro Se Plaintiff


Date: Wednesday, March 20, 2019



(Form Revised December 2017)



**CERTIFICATE OF MAILING:**

I, Martel White, do hereby certify that a true and accurate copy of this Prisoner Complaint was mailed to the Office of the Attorney General, postage prepaid via USPS First-Class mail, at the following address:

Office of the Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203

Date: Wednesday, March 20, 2019


_____
Martel White, Pro Se Plaintiff

Martel White
#111722
LCF
P.O. Box 1000
Limon, CO 80828

LEGAL

United States District Court
District of Colorado
901 19TH Street, Room A105
Denver, CO 80294

NEOPOST
03/21/2019
US POSTAGE $001.90⁰
FIRST-CLASS MAIL

ZIP 80826
041M11279326

