IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00875-RBJ-NRN

MARTEL WHITE,

      Plaintiff,

v.

C/O ELIZABETH STEPHENSON,
LT. ELIZABETH WOOD, #13057,
CAPT. CLIFFORD GULLIFORD, #10334, and
4 UNNAMED UNKNOWN CORRECTIONAL OFFICERS AT BUENA VISTA
CORRECTIONAL FACILITY,

      Defendants.

---

## ORDER

---

This matter is before the Court on the March 24, 2020 recommendation of Magistrate Judge N. Reid Neureiter, ECF No. 74. The recommendation addresses defendants Clifford Gulliford and Elizabeth Stephenson's motion to dismiss and/or alternatively, motion for summary judgment, ECF No. 42. In their motion defendants argue that Martel White failed to comply with procedures for requesting protective custody, that he failed to exhaust his administrative remedies, that he failed to allege an Eighth Amendment claim, and that Defendants Gulliford and Stephenson are entitled to qualified immunity. *Id.* at 1. Judge Neureiter recommends that I grant this motion. ECF No. 74 at 18–19. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For the following reasons I adopt the recommendation in part, as to its reasoning, but nevertheless, grant the motion.

1

# BACKGROUND

Judge Neureiter summarized this case in his recommendation.  ECF No. 74 at 2–3.  I adopt his summary with some additional facts.  Mr. White is in the custody of the Colorado Department of Corrections ("CDOC") and was incarcerated at the Buena Vista Correctional Facility ("BVCF") during the relevant period.  Defendants are CDOC employees working at BVCF.

In his amended complaint, Mr. White asserts two claims pursuant to 42 U.S.C. § 1983.  ECF No. 11.  His first claim alleges cruel and unusual punishment in violation of the Eighth Amendment stemming from rival gang members' retaliatory attack on him, which Mr. White alleges that Defendants failed to prevent.  *Id.* at 7–21.  Claim one includes two subparts: (a) while in segregated housing, he told Defendant Gulliford that he feared retaliation for his own prior assault on a rival gang member, requested protective custody, but was returned to general population and later attacked by rival gang members, *id.* at 7–11; and (b) during the attack, Defendant Stephenson pepper sprayed him when he was on the ground being assaulted by three other inmates, *id.* at 11–21.

Mr. White's second claim asserts that Defendant Gulliford violated the Fourteenth Amendment by failing to initiate the established procedure for placing (or keeping) Mr. White in segregated protective custody, failing to file the appropriate forms to place Plaintiff in protective custody, and failing to follow Administrative Regulation ("AR") 600-02.  *Id.* at 21–25.  Mr. White seeks $1 million in compensatory damages, $50,000 in punitive damages, nominal damages, and injunctive relief.  *Id.* at 6.

Defendants filed this motion on October 15, 2019.  ECF No. 42.  Mr. White filed a response on December 6, 2019.  ECF No. 58.  Defendants replied on December 20, 2019.  ECF

No. 54.  A motions hearing was held before Judge Neureiter on February 12, 2020.  ECF No. 71.

Following the motions hearing, Judge Neureiter issued a minute order at ECF No. 70 noting that

at the motions hearing, defendants, represented by the Colorado Attorney General's office,

argued that the BVCF grievance procedure may not be used to seek review of facility placement,

including protective custody.  ECF No. 70 at 1.  Judge Neureiter pointed out that in another case

before him, other defendant correctional officers also represented by the Colorado AG's office

argued that through the BVCF grievance process "[i]nmates may file grievances regarding a

broad range of topics, including assertions that a CDOC official failed to protect him from

harm."  *Id.* at 2.  Judge Neureiter ordered defendants to submit supplemental briefing "explaining

or reconciling the ostensible discrepancies in the Colorado Department of Corrections' position

regarding how a prisoner can exhaust his administrative remedies when contesting the denial of a

request for protective custody because of a risk of harm."  *Id.*  Defendants submitted

supplemental briefing arguing that no discrepancy existed.  ECF No. 72.

On March 24, 2020 Judge Neureiter issued his recommendation on defendants' motion.

ECF No. 74.  The recommendation advised the parties that specific written objections were due

within fourteen days after being served with a copy of the recommendation, and that failure to

make timely objections may bar de novo review by the district judge of the magistrate judge's

proposed findings and recommendations.  *Id.*  On April 14, 2020 Mr. White filed objections of

Judge Neureiter's recommendation.  ECF No. 75.  In those objections, Mr. White states that he

received Judge Neureiter's recommendation on April 2, 2020, making his April 14th objections

timely.  *Id.* at 20.  Defendants responded to Mr. White's objections on May 1, 2020.  ECF No.

76.

## STANDARD OF REVIEW

### A. Magistrate Judge Recommendation

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). Legal theories raised for the first time in objections to a magistrate judge's recommendation are deemed waived. *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2011).

### B. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient

factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## C.  Motion for Summary Judgment

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.  (internal citations omitted).  The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## D.  Pro se Litigants

When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).  Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A "broad reading" of a pro se plaintiff's

pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## ANALYSIS

Mr. White objects to Judge Neureiter's dismissal of his official capacity claims and his claims against four John Doe defendants. He also objects to Judge Neureiter's recommendation that I grant summary judgment on his claim against Defendant Gulliford for failure to exhaust administrative remedies and his claim against Defendant Stephenson based on qualified immunity. ECF No. 75. I address each of Mr. White's objections under a de novo standard of review.

Judge Neureiter correctly noted that defendants' motion references materials outside the pleadings, and that "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987). Because defendants moved to dismiss and alternatively for summary judgment, Judge Neureiter found that there would be no unfair surprise to Mr. White and treated defendants' motion as one for summary judgment. ECF No. 74 at 5. I agree and take the same approach.

### A.  Eleventh Amendment Immunity

Mr. White objects to Judge Neureiter's dismissal of his official capacity claims as barred by the Eleventh Amendment. ECF No. 75 at 10–11. Mr. White points out the Administrative Procedure Act ("APA") waives the sovereign immunity of federal administrative agencies and

officials in suits seeking prospective injunctive relief for a wrongful agency action.  In addition to *Bivens* and 42 U.S.C. § 1983, Mr. White's amended complaint alleges jurisdiction based on his "suffering legal wrong because of agency action," a direct quote from § 702 of the APA. ECF No. 11 at 3 (quoting 5 U.S.C. § 702).  However, Mr. White is incarcerated at Buena Vista Correctional Complex, a prison operated by the Colorado Department of Corrections, not by the Bureau of Prisons or any other federal agency.  The APA does not waive Eleventh Amendment immunity for state agencies, so I agree with Judge Neureiter that Mr. White's official capacity claims must be dismissed.

### B.  John Doe Defendants

Mr. White objects to Judge Neureiter's sua sponte dismissal of his claims against the four unnamed corrections officers whom he alleges lied to him to get him to leave his segregation cell and used excessive force to return Mr. White to the general population.  ECF No. 75 at 9–10. Judge Neureiter concluded that because Mr. White did not describe the type or amount of force used by the corrections officers, his claim was conclusory.  ECF No. 74 at 9.  Mr. White claims that his statement that the force was "excessive" is sufficient to specify the type and amount of force used.  ECF No. 75 at 9.  He also argues that he referred the Court to the video footage of the incident, as he knew that defendants would contest whatever he alleged in his complaint.  *Id.* at 10.

Mr. White proceeds pro se, and so I construe his complaint liberally.  However, Mr. White cannot avoid the plausibility standard because he proceeds pro se.  A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall*, 935 F.2d at 1110.  "Excessive" in this case is a legal standard which Mr. White must prove to succeed on his claim.  He must allege

facts, rather than legal conclusions, that show he could plausibly meet this standard. *Iqbal*, 556 U.S. at 678. Nor is it sufficient to refer the Court to a video in an objection to the magistrate judge's recommendation. He must plead a case that states a claim. Because Mr. White has only alleged that the force was excessive, rather than pleading any facts that, if true, would *show* the force was excessive, I must agree with Judge Neureiter that Mr. White has not alleged facts sufficient to state a plausible claim for relief.

### C. Eighth and Fourteenth Amendment Claims Against Defendant Gulliford

Judge Neureiter recommends that I dismiss the claims against Defendant Gulliford because Mr. White failed to exhaust his administrative remedies. ECF No. 74 at 9. Mr. White argues that he exhausted his administrative remedies, and if the court concludes he did not, that he should be excused under one of the exceptions in *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). ECF No. 75. I address these objections in turn.

1. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a claim regarding prison conditions must be administratively exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("[The PLRA's] exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The burden is on defendants to assert any failure to exhaust as a defense, and they do so here

pursuant to Fed. R. Civ. P. 56.  Thus, if the evidence presented does not create a genuine issue of

material fact as to whether Mr. Williams' constitutional claims against defendants were properly

exhausted, the claims must be dismissed without prejudice.  *See Fields v. Okla. State*

*Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

The CDOC's grievance procedure is set forth in AR 850-04.  *See* ECF No. 42-19.  AR

850-04 provides a three-step process for inmate grievances:

> First, an inmate must file a Step 1 grievance within thirty days of when he knew,
> or should have known, of the underlying facts.  If unsatisfied with the result, the
> inmate must file a Step 2 grievance within five days of receiving the written
> response; if unsatisfied with the result of Step 2, the inmate must file a Step 3
> grievance within five days of receiving the written response.  If a grievance is
> denied on procedural grounds, CDOC will certify the inmate failed to exhaust the
> grievance process.

*Kee v. Raemisch*, 793 F. App'x 726, 729 (10th Cir. 2019) (unpublished).

Mr. White filed a Step One grievance on August 8, 2018.  ECF No. 42-5.  The grievance

states that when Mr. White learned he would be moved to the general population he informed the

corrections officer that he feared for his life.  *Id.*  He also told the corrections officer that he had

previous altercations with members of the Blood gang and requested to be placed in protective

custody.  *Id.*  The grievance states that the officer, whom Mr. White later identifies as Defendant

Gulliford, denied his request because he did not fit "the criteria" and was told that someone

would speak to him about the issue.  *Id.*  No one spoke to him, and he was taken to general

population in handcuffs by four unknown corrections officers.  *Id.*  He accuses the staff of

knowingly putting him at serious risk of harm.  *Id.*  For a remedy, Mr. White requested that the

CDOC director "be informed about B.C.V.F. staff injustices and/or conduct in my removal from

this facility." *Id.*

The Step One grievance was denied, stating "[i]n response to your grievance . . . regarding facility placement: . . . This grievance procedure may not be used to seek review of the following: . . . Facility placement, unit, cell and bunk assignment (including protective custody as those decisions are guided by AR 650-02, Protective Custody). *Id.*

Mr. White filed a Step Two grievance on August 30, 2018. ECF No. 42-14. The grievance describes the altercation in which other offenders attacked Mr. White and Defendant Stephenson pepper sprayed the group of offenders. He states that Stephenson put him "at serious risk of harm by deliberate indifference that put me in a dangerous situation." *Id.* His sought-after remedy remained the same. The Step Two grievance was denied, stating "you were observed by staff to be in a physical altercation with other offenders. Staff did utilize OC [Oleoresin Capsicum — i.e., "pepper spray"] to stop the altercation to protect all parties from further assault or injury." *Id.*

Mr. White filed a Step Three grievance on October 11, 2018. ECF No. 42-13. He states that his previous grievances were "not directed toward facility placement," but rather his "present and future safety." *Id.* His sought after remedy refers to the previous grievances but acknowledges that he has been removed from the general population because of the assault. *Id.*

The grievance was against denied as "not exhausted," and the grievance officer states that "the subject of your grievance is not an issue which the grievance process was designed to address," citing AR 850-04, which states that the grievance procedure may not be used to seek review of . . . administrative segregation placement . . . classification," among other things. ECF No. 42-15.

Defendants argued that Mr. White failed to exhaust the grievance procedure because he requested relief that was unavailable through that process. ECF No. 42 at 12. As Judge

Neureiter correctly concluded, the fact that Mr. White requested relief prohibited under the grievance procedure—here, placement in protective custody—does not mean that he failed to adequately exhaust that procedure.  ECF No. 74 at 14.  The Supreme Court has held that even if the desired relief is unavailable under a grievance procedure, an inmate must nevertheless properly exhaust the procedures.  *Booth v. Churner*, 532 U.S. 731 (2001).

However, Judge Neureiter went on to conclude that because Mr. White's grievances did not request the remedies he now seeks, namely compensatory, punitive, nominal damages, and declaratory and injunctive relief, he failed to exhaust his administrative remedies.  ECF No. 74 at 14.  Though the exhaustion requirement is very demanding, I do not read it to prohibit an inmate from requesting a remedy in federal court that he did not request in his grievances.  In support of his reading Judge Neureiter cites *Sayed v. Lt. Page Virginia*, No. 16-cv-2712-WJM-NRN, 2020 WL 1130069, at *5 (D. Colo. Mar. 9, 2020), which solely relies on *Woodford v. Ngo*, 548 U.S. 81 (2006).  In *Woodford* the Supreme Court found that exhaustion is required to give an agency "an opportunity to correct its own mistakes . . . before being haled into federal court, and it discourages disregard of [the agency's] procedures."  548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 14, 145 (1992)) (internal quotations omitted).  The case at issue turned on the plaintiff's "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  The Supreme Court held that administrative exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Id.*  The plain language of *Woodford* does not require that an inmate only seek remedies requested in his grievance.  Nor can I find case law, aside from *Sayed*, indicating that other courts ascribe to this reading.  *See, e.g.*, *Butts v. Martin*, 877 F.3d 571, 581 (5th Cir. 2017) (finding plaintiff whose grievance only requested that a corrections officer be investigated and sanctioned had

exhausted administrative remedies even though complaint sought damages); *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1208 (11th Cir. 2015) (finding plaintiff who had only requested facility transfer or protective custody in his grievance had exhausted his remedies, even though plaintiff's complaint requested damages).

In addition to *Woodford*, Defendants claim that *Booth v. Churner*, 532 U.S. 731 (2001) requires that an inmate "must first ask for monetary damages and exhaust administrative remedies through the grievance procedure, even when monetary damages are not available in the grievance process." ECF No. 76 at 3. In *Booth*, the Supreme Court found that "even where an inmate sought money damages and the grievance process did not permit such awards, exhaustion was required as long as there was authority to take some responsive action." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (describing *Booth*, 532 U.S. at 740). However, requiring an inmate to exhaust the grievance procedure despite the unavailability of their desired remedy is not the same requiring an inmate to request in court only those remedies articulated in a grievance.

As discussed above, Mr. White's grievances requested that the CDOC director be notified of the staff's conduct in placing Mr. White in general population, including the assault incident. In his objections to Judge Neureiter's recommendation, Mr. White argues that he did not request damages in his grievances because he knew such remedies were not available through the grievance process. He believed if he sought unavailable remedies his grievance would be procedurally denied. He was correct, as demonstrated by the rejection of his grievances for what the grievance officer viewed as a request for facility transfer, an unavailable remedy. *See* ECF No. 42-15. He also filed his first grievance before he incurred his alleged damages during the assault and correctly believed that under the grievance process that he was not able to change the

wording without the grievance being procedurally denied.  Comporting with the purpose of the exhaustion requirement as described in *Woodford*, Mr. White scrupulously attempted to comply with the grievance procedure, to avoid a procedural denial.  I cannot find that Mr. White, in attempting to comply with the bounds of the grievance process, failed to exhaust his administrative remedies.

I conclude that Mr. White exhausted his administrative remedies.  Because I reach this conclusion, I must consider defendants' other arguments for dismissal of Mr. White's claims against Defendant Gulliford.[1]

2.  Qualified Immunity

Defendants argue that qualified immunity bars the claims against Defendant Gulliford in his individual capacity.  ECF No. 42 at 14.  Qualified immunity protects government officials acting in their individual capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of violation.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  A reviewing court has discretion to address either prong first.  *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).

---

[1] Mr. White's objections to Judge Neureiter's recommendation include many concerns about Judge Neureiter's order, ECF No. 70, that defendants provide supplemental briefing on their administrative exhaustion argument.  *See* ECF No. 75.  Mr. White argues that by requesting that defendants provide supplemental briefing on the exhaustion argument without providing him notice or a copy of the briefing, Judge Neureiter improperly provided defendants' ex parte "legal advice," making it impossible for him to survive defendants' motion.  *Id.*  Because I find that Mr. White has exhausted his administrative remedies, I do not address these concerns.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)) (internal quotations omitted). "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted). "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali*, 763 F. App'x at 650 (citing *Mullenix*, 136 S. Ct. at 308) (internal quotations omitted); *see also White*, 137 S. Ct. at 551.

I examine whether Defendant Gulliford is entitled to qualified immunity for either Mr. White's Eighth Amendment or Fourteenth Amendment claims.

a. <u>Eighth Amendment Claim</u>

Mr. White alleges that he told Defendant Gulliford that he was at risk of being harmed by members of the Bloods gang if he were transferred to general population. He claims Defendant Gulliford was deliberately indifferent in violation of the Eighth Amendment when he knowingly disregarded this risk and failed to prevent his transfer. ECF No. 11.

Deliberate indifference has both an objective and subjective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The objective component is satisfied if the "harm suffered rises to a level 'sufficiently serious' to be cognizable" under the Eighth Amendment.

*Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005)).  The subjective component is satisfied by showing that "defendants knew [plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Martinez*, 563 F.3d at 1089.

Defendants do not challenge Mr. White's showing on the objective component.  Rather, they contest whether Defendant Gulliford had the requisite mental state to meet the subjective prong.  They claim that, at most, Defendant Gulliford acted negligently and did not knowingly disregard a substantial risk of harm.  ECF No. 42 at 13.  They also argue that any alleged violation was not clearly established.  *Id.*

Defendants are correct that negligence is not enough to satisfy the subjective component.  A defendant must demonstrate, at the very minimum, what the Supreme Court has termed "subjective recklessness."  *Farmer v. Brennan*, 511 U.S. 825, 840 (1994).  To meet this standard the plaintiff may show that the defendant knew of the substantial risk of harm from direct evidence, circumstantial evidence, or "from the very fact that the risk was obvious."  *Id.* at 842.  The plaintiff must then also show that the defendant disregarded that risk.  *Martinez*, 563 F.3d at 1089.

The circumstances as Mr. White describes them are as follows: he told Defendant Gulliford about a previous altercation with members of the Bloods gang, that he has "many verifiable custody issues" logged by the BVCF Intelligence Unit, and that he believed that if he were placed in general population, his life would be in danger due to retaliation from other gang members.  He requested protective custody, and Defendant Gulliford asked him for the names of specific gang members, which he could not provide.  Defendant Gulliford told him he would speak with him later but never did so, nor did Defendant Gulliford make any effort to stop his

transfer or initiate procedures for protective custody.  ECF No. 11, ECF No. 75.  Defendant

Gulliford alleges that he told Mr. White to speak with his case manager about protective custody,

and that Mr. White did not do so.  ECF No. 42 at 4.  Defendant Gulliford also alleges that he

spoke with the Intelligence Unit about Mr. White's concerns and was told that Mr. White "did

not have verifiable custody issues."  *Id.*

I cannot conclude that Mr. White has alleged a clearly established Eighth Amendment

violation.  Assuming, without deciding, that Defendant Gulliford's conduct amounts to a

constitutional violation, Mr. White has not cited, nor have I uncovered, any case law suggesting

that such a violation was clearly established.

In the Tenth Circuit, the closest case is *Verdecia v. Adams*, in which a Cuban inmate was

placed in a cell with two Latin King gang members, after an assault by Latin Kings on Cuban

inmates occurred at the facility.  327 F.3d 1171, 1176 (10th Cir. 2003).  The Cuban inmate

requested transfer to a different cell, citing fear of attack by his cell mates, and was subsequently

assaulted.  *Id.*  The Tenth Circuit concluded that two prison official defendants were not

deliberately indifferent to a serious risk of harm, because they provided the Cuban inmate with a

transfer form and instructions for requesting transfer, and they conducted investigation of the

previous assaults and concluded they were not gang-related.  *Id.*  Though it is possible that the

prison officials in *Verdecia* were more diligent than Defendant Gulliford, Defendant Gulliford

similarly provided Mr. White with some information about protective custody and attempted to

verify whether there was a risk of harm.  I do not address whether Defendant Gulliford's actions

constituted a constitutional violation.  I only conclude that under existing law such a violation

was not clearly established.

Because I find that Mr. White has not alleged a clearly established constitutional violation, Defendant Gulliford is entitled to qualified immunity on Mr. White's Eighth Amendment claim.

b. Fourteenth Amendment Claim

Mr. White also claims that Defendant Gulliford violated his Fourteenth Amendment due process rights by failing to initiate the established procedure for placing or keeping Mr. White in protective custody, which resulted in his injury. ECF No. 11. I interpret Mr. White's due process claim to assert that the BVCF protective custody procedure, AR 650-02, creates a due process–protected liberty interest in protective custody or the protective custody process, that he was impermissibly denied when Defendant Gulliford failed to initiate the process following Mr. White's verbal request.

Defendants argue that Defendant Gulliford is entitled to qualified immunity for this claim as well. ECF No. 42 at 14. I must agree. Even assuming that he has such a liberty interest that was denied, I cannot find that this amounts to a clearly established due process violation.

As with Mr. White's Eighth Amendment claim against Defendant Gulliford, I can find no case law, nor has Mr. White provided any, suggesting that a prison official violates an inmate's due process rights by failing to initiate protective custody procedures upon request. The Supreme Court has held that though prison regulations "may under certain circumstances create liberty interests" protected by due process, "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Mr. White does not challenge a deprivation of freedom from some kind of restraint, such as placement in administrative segregation. Rather he challenges the failure of the prison to place him in such

segregation in order to protect him.  Challenges to prison officials' failure to protect inmates from harm are brought under the Eighth Amendment, as Mr. White did in his first claim.

Mr. White's alleged due process violation is not clearly established.  Therefore, Defendant Gulliford is entitled to qualified immunity for Mr. White's Eighth and Fourteenth Amendment claims, and both claims are dismissed.

### D.  Eighth Amendment Excessive Force Claim Against Defendant Stephenson

Mr. White objects to Judge Neureiter's dismissal of his excessive force claim against Defendant Stephenson due to his failure to provide sufficient evidence that she had a culpable state of mind.  ECF No. 75.

An excessive force claim requires this Court to analyze two prongs: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind."  *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotations and citations omitted).  The objective element of the claim is "contextual and responsive to contemporary standards of decency."  *Id.* (quoting *Hudson*, 503 U.S. at 8).  The subjective component "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 6 (citing *Whitley*, 475 U.S. at 320–21).  A sufficiently culpable state of mind (i.e., malicious and sadistic) may be inferred where "there can be no legitimate purpose for the officers' conduct."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006).

Judge Neureiter concluded that Mr. White had met the objective prong, but that he had offered no evidence suggesting Defendant Stephenson had acted with a culpable state of mind.

ECF No. 74 at 16.  Mr. White argues that because Defendant Stephenson was "conscious and in control" of her actions at the time she sprayed Mr. White, she was able to tell the difference between a victim and an assailant and chose to spray Mr. White, the victim.  ECF No 75.  I understand Mr. White to argue that Defendant Stephenson had no legitimate purpose in spraying him, the obvious victim of an attack, and therefore her culpable state of mind can be inferred from her conduct.

Unfortunately for Mr. White, under Tenth Circuit precedent, I cannot find that Defendant Stephenson's actions were a clearly established Eighth Amendment violation.  In *Green v. Corrections Corp. of America*, the Tenth Circuit found that an officer had not used excessive force in breaking up a fight where the officer pepper sprayed only the plaintiff who was complying with an order to cease fighting.  401 F. App'x 371 (10th Cir. 2010) (unpublished).  The officer used the pepper spray on the plaintiff in response to another inmate's punching the plaintiff in the face, and the officer did nothing to the aggressor inmate.  *Id.* at 373. The Tenth Circuit held that the plaintiff's allegations established that the officer had reason to use some force, pointing to the fact that plaintiff admitted to physically restraining another prisoner before the application of pepper spray.  In coming to this conclusion, the Tenth Circuit highlighted that "prison official[s] may use reasonable force to 'maintain or restore discipline.'"  *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

In *Gargan v. Gabriel*, a prison official sprayed an inmate with a known heart condition "[four] times with [four] whole cans of pepper spray while he was unarmed, alone and secured in a segregation cell."  50 F. App'x 920, 923 (10th Cir. 2002) (unpublished).  The court, however, found that the complaint failed to discuss "the need, or lack thereof, to use pepper spray" in extracting the inmate from his cell, indicating that excessiveness could not be inferred from the

conduct itself.  *Id.* (concluding that the complaint did not allege "facts sufficient to support a reliable inference that pepper spray was used on the plaintiff unnecessarily, excessively, or wantonly").

The facts in each of these cases—including the instant one—raise, for me, real questions about the various prison officials' "legitimate purpose" in employing such tactics.  *Serna*, 455 F.3d at 1152.  However, under these precedents, I cannot find that every reasonable official would have known Defendant Stephenson's behavior amounted to a constitutional violation.  *See Mullenix*, 136 S. Ct. at 308.  *Green* and *Gargan* together establish that the subjective prong cannot be inferred from this type of conduct alone.  Additionally, the instant case is similar enough to *Green*, in that Defendant Stephenson may have "had reason to use some force" because when she approached the scene, "all four offenders were hitting, pushing, and shouting." ECF No. 42-8.  Though Mr. White disputes the truth of Defendant Stephenson's version of the facts, the question at issue is Defendant Stephenson's subjective belief that she needed to apply force to maintain or restore discipline.  *Hudson*, 503 U.S. at 6.  Accordingly, Defendant Stephenson is entitled to qualified immunity and I dismiss Mr. White's claim against her.

## ORDER

1.  Magistrate Judge Neureiter's recommendation, ECF No. 74, is ADOPTED in part.

2.  Defendants' motion to dismiss and/or alternatively motion for summary judgment, ECF No. 42, is GRANTED.

3.  This civil action and all claims therein are DISMISSED WITH PREJUDICE.

4.  As the prevailing parties, defendants are awarded their reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54. 1.

DATED this 1st day of June, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge